## COON & Another *v.* WILSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

Argued January 14, 15, 1885.—Decided January 26, 1885.

Reissued letters patent No. 8,169, granted to Washington Wilson, as inventor, April 9, 1878, on an application therefor filed March 11, 1878, for an "improvement in collars" (the original patent, No. 197,807, having been granted to him December 4, 1877), are invalid as to claims 1 and 4.

The original patent described and claimed only a collar with short or sectional bands, that is, a band along the lower edge of the collar, made in parts or sections, and having a graduated curve. The reissued patent and claims 1 and 4 thereof were so framed as to cover a continuous band, with a graduated curve, but not in sections. The defendants' collars were brought into the market after the original patent was issued, and before the reissue was applied for, and the reissue was obtained to cover those collars; and, although it was applied for only a little over three months after the date of the original patent, there was no inadvertence or mistake, so far as the short or sectional bands were concerned, and it was sought merely to enlarge the claim. Claim 2 of the reissue was substantially the same as the single claim of the original patent, and claim 3 had, as an element, short bands. As the defendants' collars had a continuous band, with a graduated curve, and not short or sectional bands, and did not infringe the claim of the original patent or claims 2 and 3 of the reissue, and claims 1 and 4 thereof were invalid, the bill was dismissed.

This was a suit in equity, brought, in May, 1878, in the Circuit Court of the United States for the Southern District of New York, for the infringement of reissued letters patent No. 8,169, granted to the plaintiff, Washington Wilson, as inventor, April 9, 1878, on an application therefor filed March 11, 1878, for an "improvement in collars" (the original patent, No. 197,-807, having been granted to him December 4, 1877). The specifications and claims of the original and reissued patents were as follows, the original being on the left hand, and the reissue on the right hand, and the parts of each which are not found in the other being in italic:

### Original.

"Be it known that I, Washington Wilson, of the city, county, and State of New York, have invented a new and improved collar, of which the following is a specification:

In the accompanying drawings, Figure 1 represents a side elevation of my improved collar, and Fig. 2 a perspective view of the same. Similar letters of reference indicate corresponding parts.

This invention refers to an improved standing collar, that retains all the advantages of the old-style curved band, without the objection of springing the collar too far from the neck, so as to come in contact with the coat and soil the collar. The collar also hugs the neckband in such a manner that the collar is prevented from overriding it, resulting in a more comfortable fit.

The invention consists of a standing collar, having *sectional* bands, *starting* from centre of collar, or any other point between centre and ends, *and continuing with a graduated curve* to and beyond the ends of the collar.

### Reissue.

"Be it known that I, Washington Wilson, of the city, county, and State of New York, have invented a new and improved collar, of which the following is a specification:

In the accompanying drawings, Figure 1 represents a side elevation of my improved collar, and Fig. 2 a perspective view of the same. Similar letters of reference indicate corresponding parts.

This invention refers to an improved standing collar, that retains all the advantages of the old-style curved band, without the objection of springing the collar too far from the neck, so as to come in contact with the coat and soil the collar. The collar also hugs the neckband in such a manner that the collar is prevented from overriding it, resulting in a more comfortable fit.

The invention consists of a standing *or other* collar, having *curved and graduated* bands *that extend along the lower edge of the collar, either* from *the* centre of *the* collar, or *from* any other point between centre and ends, to and beyond the ends of the collar. *The rear buttonhole is thrown into the top or*

Referring to the *drawing*, A represents a standing collar of my improved construction, and B the *short or sectional* bands, which *start* from the centre of collar, or any other point between the centre and ends, and continue along the lower part of the *same*, with a graduated curve and increasing width, to and beyond the ends of the collar, in the same manner as in ordinary bands.

The bands B are made either to overlap the collar proper, or the collar is made to overlap the bands, or one part of the bands laps over the collar ends, while the remaining part is overlapped by the collar, so as to obtain smoothly-covered joints at both meeting ends of collar and *sectional* bands.

The bead formed by the connection of collar and band may also be continued, if desired, along the lower edge of that part of the collar between the bands, and thereby a more ornamental appearance *imparted* to the *same*.

The *use of the short or sec-*

*body of the collar above the band or binding of the same.*

Referring to the *drawings*, A represents a standing *or other* collar of my improved construction, and B the *curved and graduated* bands, which *extend* from the centre of *the* collar, or any other point between the centre and ends, and continue along the lower part of the *top or body of the collar*, with a graduated curve and increasing width, to and beyond the ends of the collar, *the ends being curved* in the same manner as in ordinary bands.

The bands B are made either to overlap the collar proper, or the collar is made to overlap the bands, or one part of the bands laps over the collar ends, while the remaining part is overlapped by the collar, so as to obtain smoothly-covered joints at both meeting ends of collar and *graduated* bands.

The bead *or binding* formed by the connection of collar and band may also be continued, if desired, along the lower edge of that part of the collar-*body* between the bands, *so as to connect the graduated bands*, and *impart* thereby a more ornamental appearance to the *collar*.

∴ *The rear button-hole a is ar-*

*tional* bands *produces* a saving of material, as compared to the old style of continuous band, *and furnishes a collar that hugs the neck-band in superior manner, without springing back so as to come in contact with the collar.*

Having thus described my invention, I claim as new and desire to secure by letters patent—

A collar, *A*, having sectional bands *B*, starting from the centre of the collar, or any point between the centre and ends thereof, and continuing with a graduated curve to and beyond the ends of the same, substantially as *described and shown,* and for the purpose set forth."

*ranged in the top or body of the collar, above the bead or binding at the lower edge of the same, which position of the button-hole, in connection with the graduated bands, produces a collar that hugs the neck-band in superior manner without springing back, so as to come in contact with the coat-collar.* The *shorter graduated* bands *produce also* a *considerable* saving of material, as compared to the old style of continuous band, *that extends at uniform width along the lower part of collar.*

Having thus described my invention, I claim as new and desire to secure by letters patent—

1. *A collar provided with a band composed of the parts B B, curved and tapered, or decreasingly graduated from the ends towards the middle, as shown and described.*

2. A collar having *short or* sectional bands, starting from the centre of the collar, or any point between the centre and ends thereof, and continuing with a graduated curve to and beyond the ends of the same, substantially as and for the purpose set forth.

3. *The combination, with a collar having short bands graduated on a curve and decreas-*

*ingly toward the middle, of a band-connecting bead or binding along the lower edge, as set forth.*

*4. A collar having curved and graduated bands that extend along the top or body of the collar, from the centre, or any other point between the centre and ends thereof, to and beyond the ends of the collar, and having the rear button-hole placed above the band or binding into the top or body of the collar, substantially as shown and described."*

The following are the drawings of the reissue, those of the original patent being the same, except that the button-hole is not lettered in the original:

*Fig.1.*

*Fig.2.*

The answer set up, as defences, (1) that the reissue was ob-

tained for the purpose of covering a style or form of collar not intended to be covered by the original patent, the original covering a short or sectional band collar only, and the reissue being intended to cover a different style of band, subsequently adopted by the plaintiff, and not having been procured for the purpose of correcting a mistake in the claim of the original; (2) that the plaintiff was not the original and first inventor of the thing patented; (3) non-infringement.

The case was heard on pleadings and proofs, and a decision rendered, 18 Blatchford, 532, in favor of the plaintiff, on which an interlocutory decree was entered, January 8, 1881, adjudging the reissued patent to be valid, and to have been infringed by the defendants, by the manufacture and sale of four collars: Exhibit F, Delhi; Exhibit G, Orion; Exhibit H, Zenith; and Exhibit I, Spy; and awarding an account of profits and damages, to be taken by a master, and a perpetual injunction. On the report of the master, a final decree was entered, July 28, 1881, in favor of the plaintiff, for $8,355.32, which included costs. The defendants appealed to this court.

*Mr. William F. Coggswell* for appellants.

*Mr. Edmund Wetmore* and *Mr. Hamilton Wallis* for appellee, argued the questions of infringement and anticipation; and also the construction of § 4916 Rev. Stat., concerning reissues. So much of that section as is relevant is as follows: "Whenever any patent is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident or mistake, or without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee . . . for the unexpired part of the term of the original patent. . . . The specifications and claim in every such case shall be subject to revision and restriction in the same manner as original appli-

cations are. Every patent so reissued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in the case of a machine patent shall the model or drawigns be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the Commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident or mistake, as aforesaid." The word "specification," when used separately from the word "claim," in § 4916, means the entire paper referred to in § 4888, namely, the written description of the invention "and of the manner and process of making, constructing, compounding and using it," and the claims made. The word "specification," meaning description and claims, is used in that sense in §§ 4884, 4895, 4902, 4903, 4917, 4920 and 4922. In some cases, as in §§ 4888 and 4916, the words "specification and claim" are used, and in § 4902 the word "description" and the word "specification" are used. But it is clear that the word "specification" when used without the word "claim" means description and claim. If, then, the original patent is within the statute as to either its "description" or "claim," or both, the reissue was valid. But what meaning shall be given to the remainder of the section? It will be observed that two terms are employed, "invalid" and "inoperative." The word "invalid" plainly refers to cases where, from either of the causes stated, the patent is a nullity and should never have been issued. Its application is limited to patents void for insufficiency of the specification. If the word "inoperative" is to be construed as meaning the same thing, its use was superfluous. We are then driven to seek another meaning for it, and this is not difficult to find. Where the subject of an invention is plain, from the drawing or model, or both, and the specification is defective, in that the language used fails to fully describe the thing invented, then, as to the part of the invention omitted, the specification may well be said to be inoperative. This

principle has received the general sanction of the courts, in a long line of authorities.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He recited the facts as above stated, and continued:

The defendants' collars have bands which are continuous from end to end of the collar, and are not in two parts, nor divided by any vertical or other seam, at the centre of their length or elsewhere. They have no short or sectional bands, which start from the centre of the collar, or from any point between the centre and the ends. The band is not shorter than the length of the collar. In the original patent, the invention is stated to be a collar having short or sectional bands, that is, the collar has not a continuous band, of one piece of cloth as long as the collar, and extending from end to end of the collar, but has its band made in two sections, and each of those sections starts or begins to run from the centre of the length of the collar, or from a point between the centre and the end, to and beyond the end. The bands have a graduated curve and increasing width, from their starting points, to and beyond the ends of the collar. But that is only one feature in the claim of the original patent. The other feature, the sectional bands, is made equally important in that claim, and a collar is not the collar of that claim unless it has both of those features. That claim is limited to a collar with those features, "substantially as described and shown."

The Circuit Court adopted the view, that a band, composed of two sectional bands, starting from the centre, and proceeding with a graduated curve and increasing width, would not make the whole band any less a continuous band with a graduated curve and increasing width towards each end; that the use of a continuous band of the latter description would not make the parts of it each side of the centre any the less sectional bands; that neither would be a continuous band of uniform width, and, as compared with that, there would be a saving of material by the use of either arrangement; and that it made no difference, in the Wilson invention, whether there was a vertical seam in the centre of the band or not, provided

the other features of the collar existed; that, if there existed, before Wilson's invention, a collar having those features, the fact that it had not such vertical seam would not distinguish it from the Wilson invention; that the real invention shown in the original specification was that claimed in the reissue; and that the reissue was, therefore, valid.

The defendants' collars have a band of continuous material from end to end of the collar, and the back button-hole in the body of the collar, but the band is not of uniform width throughout, being narrowed in the centre. It has, as a whole, the same style of graduated curve which the Wilson collar has. The defendants' collars were first made and sold after the original patent of Wilson was granted, and after the defendants had seen sectional band collars made under it. The first of the defendants' four collars was made and sold in February, 1878, and the other three in March, or April, or May, 1878. The reissue was applied for March 11, 1878, and Wilson testifies that his impression is, that he had previously heard of the defendants' collars. It is evident that the reissue was obtained because the defendants' collar, with a continuous band, had been put on the market, and for the purpose of obtaining claims which would certainly cover such a collar. The changes made in the specification and claims show this. The specification of the reissue, in stating what the invention consists of, omits the statement that it is a collar having *sectional* bands, and states that it is a collar having *curved and graduated* bands. It also omits the statement that the bands *start* from the centre, or from a point between the centre and the ends, and states that the curved and graduated bands *extend along the lower edge of the collar*, from the centre, or from a point between the centre and the ends. The statement of the invention, in the original patent, did not cover the defendants' collars, nor did the claim of that patent. The 2d claim of the reissue is substantially the same as the claim of the original patent. But the 1st and 4th claims of the reissue, corresponding with the changes made in the description, ignore the short or sectional bands, and refer only to a curved and graduated band. The 3d claim preserves the short bands, curved and graduated. As the defendants'

collars do not have the short or sectional bands, and so do not infringe the 2d and 3d claims of the reissue, the question arises as to the validity of the 1st and 4th claims, which it is alleged are infringed.

The final decree in this case was entered July 28, 1881. The decisions of this court in *Miller* v. *Brass Co.*, 104 U. S. 350, and *James* v. *Campbell*, 104 U. S. 356, were made January 9, 1882. Under those decisions, and many others made by this court since, the 1st and 4th claims of the reissue cannot be sustained. Although this reissue was applied for a little over three months after the original patent was granted, the case is one where it is sought merely to enlarge the claim of the original patent, by repeating that claim and adding others; where no mistake or inadvertence is shown, so far as the short or sectional bands are concerned; where the patentee waited until the defendants produced their continuous band collar, and then applied for such enlarged claims as to embrace the defendants' collar, which was not covered by the claim of the original patent; and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original. As the rule is expressed in the recent case of *Mahn* v. *Harwood*, 112 U. S. 354, a patent "cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed, in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted." But a clear mistake, inadvertently committed in the wording of the claim, is necessary, without reference to the length of time. In the present case, there was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering bands not short or sectional. The description had to be changed in the reissue, to warrant the new claims in the reissue. The description in the reissue is not a more clear and satisfactory statement of what is described in the original patent, but is a description of a different thing, so ingeniously worded as to cover collars with continuous long bands and which have no short or sectional bands. The draw-

ings show no continuous band; and the statement in the original patent, that " the use of the short or sectional bands produces a saving of material, as compared to the old style of continuous band," shows that the patentee was drawing a sharp contrast between the only bands he contemplated—short or sectional bands—and a continuous band, of one piece of material, as long as the collar. The original patent industriously excluded from its scope a continuous band. In the reissue, to cover a continuous graduated band, the two bands B B are converted into a single band composed of the, parts B B, and, while that is described as extending along the top or body of the collar, the " shorter graduated bands " are described as saving material, as compared with an old style continuous band, of uniform width.

While we are of opinion that the views of the Circuit Court, as before recited, were erroneous, we presume that if this case had been decided after January, 1882, the decree would not have been for the plaintiff.

*The decree of the Circuit Court is reversed, and the case is remanded to that court, with a direction to dismiss the bill, with costs.*