WESTERN UNION TEL. CO. *v.* BALTIMORE & O. TEL. CO.

*(Circuit Court, S. D. New York.   1885.)*

1. PATENTS FOR INVENTIONS—REISSUE—ENLARGING CLAIMS—MISTAKE—DILIGENCE.
   A patent cannot be lawfully reissued for the mere purpose of enlarging a claim, unless there has been a clear mistake, inadvertently committed in the wording of the claim, and the application for reissue is made within a reasonable time.

2. SAME—QUESTION FOR COMMISSIONER OF PATENTS—REASONABLE TIME, QUESTION FOR COURT.
   Whether there has been such an inadvertent mistake is, in general, a matter of fact for the commissioner to decide; but whether the application is made in reasonable time is matter of law which the court may determine by comparing the reissued patents with the original and, if necessary, with the records in the patent-office when presented for record.

3. SAME—WHAT IS REASONABLE TIME.
   What is a reasonable time will depend upon the circumstances in each case, but as the patentee is charged with notice of what his patent contains, the court will hold him to reasonable diligence.

4. SAME—PRELIMINARY RELIEF—DOUBT AS TO VALIDITY OF REISSUE.
   Where a reissue is obtained, not to correct a mistake, but to secure broad claims that will ostensibly cover more comprehensive rights than belong to the patentee, a preliminary injunction will not be granted to restrain infringement of a good claim, if the defendant has acted in the honest belief that the reissue was wholly void.

Motion for Preliminary Injunction.

*Edw. N. Dickerson, Saml. A. Duncan,* and *C. L. Buckingham,* for complainants.

*Frederic H. Betts, Grosvenor P. Lowrey,* and *J. E. H. Hyde,* for defendants.

WALLACE, J.   The complainant moves for a preliminary injunction to restrain defendant from infringing the second claim of reissued letters patent No. 10,035, division C, granted to Joseph B. Stearns, assignor to complainant, for "duplex telegraph apparatus." The motion is resisted upon the ground that there was no patentable novelty in the alleged invention, and that the reissue is void because it includes that part of the invention which had been abandoned to the public by the delay on the part of the patentee in applying for a reissue. The original patent was granted to Stearns, May 14, 1872; it was reissued April 1, 1873, (No. 5,344,) and was again reissued in divisions A, B, and C, February 7, 1882.

No doubt whatever is entertained that Stearns was the first and

original inventor of a very valuable improvement in duplex telegraphy, which obviated a serious practical difficulty in duplex transmission over long lines, caused by the interference of the return charge arising from static induction with the operation of the receiving instrument at the transmitting end. He did this by a new combination of old instrumentalities. He added to the existing duplex telegraph a condenser, so placed that it would receive a charge from the battery equivalent to the charge which the line at the same time received, and would discharge that charge around one coil of the relay at the same time the line discharged its charge around the other coil, so that the armature between the two coils would not be moved by the discharge from the line. As is stated in the affidavit of one of the defendants' experts, "no one before Stearns had endeavored to obviate the effects of the return current due to the static induction upon the receiving instrument in duplex telegraphy with the exception of Varley; and the device used by Varley was not a condenser, nor was it in any sense the known equivalent of a condenser."

The invention thus made by Stearns was fully and clearly described in the specification of the original patent. The claim of that patent upon one construction may be deemed to have been narrower than the real invention. This, however, would affect only the question of infringement. A new and valuable invention was described and claimed.

It is not necessary, in considering the first objection to the validity of the patent, to inquire into the prior state of the art. The defendants' expert says: "The claim does not appear to cover any more than the patentee had a right to claim in view of the state of the art at that date." This concession renders such an inquiry unnecessary, but the concession is abundantly fortified by the facts as they appear upon this motion.

The real question in the case would seem to be whether the reissue, so far as it affects the claim infringed, is void. The claim involved is as follows:

"The combination, in a duplex telegraph, substantially as hereinbefore set forth, of a battery, a main line, and artificial or compensating line, a rheostat in said artificial line, and a condenser having its terminals, respectively, connected with said artificial lines and the earth."

The claim of the original patent reads as follows:

"In telegraph apparatus for double transmission, the combination, with the relay at each station, of a condenser, for the purpose of neutralizing the effect of the return current due to the static induction of the line, as set forth."

If the case turned solely upon the question whether the claim of the reissue is broader than that of the original, a sufficient doubt would be suggested to require a motion for an injunction to be denied, because a fair doubt is sufficient to defeat such a motion.

The claim of the original may fairly be construed as limited to a combination in which a condenser is employed in connection with the

relay at each station upon a duplex telegraph line. Of course a duplex telegraph implies a line with a receiving and transmitting station at each end of it. The drawings of the patent show only one end of such a line, and the specification of the original describes the apparatus in detail, including a condenser, a battery, and a branch circuit or compensating line with a rheostat in it at that end of the line shown in the drawing. It may fairly be assumed that the claim was expressed in the terms used in order to exclude any implication that the invention consisted in employing the condenser at one end of the line or at one station only. The real invention of Stearns did not require his condenser to be employed in combination with the rest of the apparatus at both ends of the line. If a condenser were used with the apparatus at one station only, the static effect of induction would be neutralized at that end of the line only. The combination would be operative and advantageous to this extent; but it would be less so than if it were used in the apparatus at each station. If condensers were placed at both stations in the required combination, signals at both could be more rapidly and perfectly received.

It admits of fair argument whether it would not have been a fair construction of the claim of the original to interpret it as meaning the combination of a condenser with the two relays of the duplex system. It would have been the duty of a court to construe the claim in such a way as to protect the real invention unless the language of the specification and the claim would preclude such a construction. The case does not turn solely on this point, however, because within 11 months from the granting of the original patent it was surrendered, and a reissue granted, which contained this claim:

"Claim 2. In an apparatus for double transmission, the combination of a condenser with a branch or compensating circuit, whereby the effect of static induction upon the receiving relay or instrument is counteracted, substantially as and for the purpose herein specified."

The specification was amended by inserting as follows:

"As the apparatus at each terminal station is similar, the diagram represents the apparatus at one station only."

In this claim every unnecessary element of the combination is eliminated. It covers the invention in the broadest form in which it can be stated. Limited, as its terms must be, by the descriptive matter of the specification, and read in view of the prior state of the art, the claim was not too broad. It does not require a condenser at each station as a constituent. In other respects, as is argued for the defendant, the claim is narrower in terms than that in the original, because it restricts the combination to one in which the condenser is employed with "a branch or compensating circuit." If this claim included as one of its constituents, by fair interpretation, "a condenser having its terminals, respectively, connected with said artifi-

cial lines and the earth," it was obviously broader than the claim which is now in controversy.

The claim in controversy is not enlarged by reason of any undue enlargement of the descriptive part of the specification of the reissue. Mr. Renwick, an expert for the defendant, in his affidavit, says that he agrees with Mr. Palmer, (another expert for the defendant,) whose affidavit he has read, "that all the additional descriptive matter which describes more fully and completely the operation and uses of the condenser, and the structure of the condenser, is legitimate, and, although not necessary, does not widen the invention described in the original patent." He goes on to say that the patentee enlarges his general preliminary statement of the character of his invention, because in the original patent "he states, in substance, that the invention consists in placing a condenser in a certain branch circuit," while the reissue "states, in substance, that the invention consists in producing artificial currents of static charge and of static discharge at the home station, and causing the same to occur simultaneously with those from or on the main line, and that, therefore, the effect of the latter can be practically eliminated." What the patentee does state in his original is this:

"This invention is an improvement upon apparatus for transmitting two signals at the same time from opposite ends of the same line wire, —its object being to prevent the effect upon the relay at the sending station of the return current, due to the static induction of the line; and it consists in the connection, with the apparatus, of a condenser with any of the well-known forms."

In the first reissue the statement is as follows:

"This invention relates to duplex telegraph apparatus,—its object being to neutralize the effect of the return current from the line on the relay or receiving instrument when the line is put to work; and to effect this the invention may, in general, be stated to consist in the mode of accomplishing this result by establishing, in a branch or compensating circuit, connected to the circuit of the compensating helix of the relay, during the time that the line is put to work, a return current, which will neutralize the effect of the return current, from the line upon the line-helix of the relay, substantially in the manner hereinafter described."

Mr. Renwick's criticism upon the preliminary statement of the nature of the invention contained in the second reissue is that no mention is made in it of a condenser, and no assertion that the invention is based upon the use of a condenser, although it is stated afterwards that the result may be conveniently effected by the use of a condenser. Obviously this criticism has no force when applied to the claim in controversy, because the claim makes the condenser an element of the combination. A condenser having its terminals, respectively, connected with the artificial or compensating line of the combination is precisely what is described in the claim of the first reissue as a condenser "with a branch or compensating circuit, * * * substantially as and for the purpose herein specified." The only distinction between the two things which is emphasized in the argument of coun-

sel is that it substitutes "an artificial line" in place of a "branch circuit" or compensating circuit. It is entirely clear that these terms are used synonymously in the electrical art. The compensating circuit is commonly termed the artificial line. The specification states that the branch circuit "is technically called the artificial line in order to distinguish it from the main line." There is no merit in the criticism.

It thus appears that the claim of the second reissue now in controversy is not only no broader than claim 2 of the first reissue, but it is specifically narrower in terms, although not so in effect when the specific elements required by construction to be incorporated were read into that claim; and it also appears that the second claim of the first reissue was no broader than was warranted by the invention.

The claim in controversy is good, notwithstanding other claims of the reissue expand the claim of the original patent, or any claims which the patentee might have lawfully made. As to this claim the second reissue is valid if it is invalid as to the other claims. *Gage* v. *Herring*, 107 U. S. 640; S. C. 2 Sup. Ct. Rep. 819. It protects the complainant if the first reissue was lawful, and so much of the invention as was not claimed in the original was not abandoned to the public when that reissue was obtained. There has been no abandonment since the first reissue was granted.

The case, then, hinges upon the validity of that reissue. Was it a lawful exercise of authority on the part of the commissioner? Was the patentee entitled to reclaim so much of his invention as he had not claimed in the original? The test is found in the rule enunciated, among other cases, in *Mahn* v. *Harwood*, 112 U. S. 354; S. C. 5 Sup. Ct. Rep. 174. That decision covers two propositions applicable here. The first is that a patent cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed in the wording of the claim, and the application for reissue is made within a reasonably short time. The second is that the question whether there has been such an inadvertent mistake is, in general, a matter of fact for the commissioner to decide; but whether the application is made in reasonable time is matter of law which the court may determine by comparing the reissued patents with the original, and, if necessary, with the records in the patent-office when presented by the record. It was further decided in that case that no invariable rule can be laid down as to what is a reasonable time within which the patentee must seek for the correction of a claim which he considers too narrow; that it is for the court to judge in each case, and it will exercise proper liberality towards the patentee; but as the law charges him with notice of what his patent contains, he will be held to reasonable diligence. In *Coon* v. *Wilson*, 113 U. S. 268, S. C. 5 Sup. Ct. Rep. 537, the reissue was applied for only a little over three months after the date of the original patent, but it was held to be invalid, because apparently made to enlarge the scope

of the original when the circumstances rebutted any presumption of inadvertence or mistake in the wording of the claim of the original. It appeared that the claims of the reissue were enlarged in order to embrace articles made by the defendant subsequent to the date of the original and not covered by the claim; and it also appeared that what was sought for by the reissue was industriously excluded from the description in the original.

This is not such a case. The claim in the original patent was not one as to which it can be said that the patentee had no ground to suppose it to be narrower than his invention. It did not necessarily and unequivocally confine the patentee to a combination requiring a condenser in connection with the relay at each station. While that might be the interpretation, which, on first impression, would be suggested to the mind of the patentee, there was, nevertheless, room to contend for one which would give him all he was entitled to. Indeed, it appears that the patent-office was of the opinion that the patentee was restricted by the description and drawings to the use of a condenser at one station only. Nothing in the affidavit indicates that the reissue was applied for in view of any new apparatus or patent brought into existence intermediate his application and the date of the original. There was no motive for enlarging the claim which did not exist when he applied for the original patent. The only circumstance that is suggested to show that he did not intend to claim originally what he claimed in his application for a reissue is that, shortly before he made his application for the original, he had made an application, which was withdrawn, which contained a claim as follows:

"In a telegraph apparatus for double transmission, operated as described, a condenser in combination with the relay, and resistance coil connected therewith, for the purpose of preventing the effect of the return current due to the static charge of the line."

In that application the preliminary statement of the nature of the invention and the descriptive parts of the specification differed in many respects from those substituted in the new application. It is apparent on the face of the claim, which makes a resistance coil (or rheostat) an element of the combination, that it was in this respect narrower than the claim in the new application. It was not limited by the words "at each station," but in other respects was a narrower claim. There was nothing in the language of the application to indicate that the patentee supposed his combination would not be operative if the condenser was employed at one station only, or that his claim would be too broad, unless limited as expressed. In short, there is nothing in the circumstance that he substituted a new application for one previously made to distinguish the transaction from the common one, where an inventor is dissatisfied with the contents of his application and wishes to exercise his privilege of preparing and making a new one which shall more carefully and completely protect his rights. There is no fair reason for assuming that

he deliberately intended to limit himself in the application which was acted on to a narrower claim than he was entitled to make.

The case is one where the patentee applied for a reissue within 11 months from the date of his original patent, in order to correct a claim which might not fully secure his invention, and which was certainly so ambiguous as to suggest a doubt whether it was sufficient or not. It is not a case where the suggestion of inadvertence or mistake was a mere pretense of the patentee, or one where the mistake was so obvious as to be instantly discernible upon reading the claim. So far from being apparent upon the first inspection of the patent, there is room for grave doubt now whether it was not sufficient. The patentee was justified in moving cautiously and saving himself unnecessary expense. The granting of the reissue, so far from being an abuse of the power conferred upon the commissioner, was a just and equitable exercise of his authority. The patentee was not guilty of laches; his application was made within a reasonable time; and the reissue, so far at least as it relates to the second claim, was a legitimate and commendable exercise by the commissioner of the duty devolved upon him by statute.

Although, as to the claim in controversy, the second reissue must be held valid, that reissue in the form of three divisions, containing nine claims in all, was entirely unnecessary. The rights of the complainant were fully protected by the first reissue; the second must have been obtained upon the theory that the patent might be useful as a weapon of offense by means of claims so comprehensive and elastic as to embrace within their scope all subsequent inventions which might be made in the same field of improvement. Intermediate the time of the first reissue and the application for the second reissue, patents for cognate inventions were obtained by Thompson and Selden, (September, 1879,) by F. W. Jones, (March, 1880,) and by Gerrit Smith, (March, 1881.) The reissue in suit was apparently designed to overreach these patents and subordinate them to the complainants' monopoly. The reissue is not to be criticised because the claims of the several divisions cover the invention of Stearns, in the broadest form and in the narrowest form in which it is capable of use; but because it is upon its face a flagrant attempt to enlarge the scope of the invention in order that the patent might be more available for the suppression of all competing inventions. It is well calculated to mislead the public into the belief that the complainant enjoys practically the exclusive control of duplex and quadruplex telegraphy as used over long lines. A party seeking the assistance of a court of equity to protect such a patent appeals to the court to be astute to discover a legal right, which has not been subverted, in the unjustifiable attempt to encroach upon the rights of others. A complainant asking the protection of such a patent does not occupy an attitude which is commendable in the view of a court of equity. If the essential motive of those who represented the complainant in obtain-

ing the reissue was to enable the complainant to assert a colorable title to an invention to which all subsequent inventors must pay tribute, this was an illegitimate and oppressive motive, and the court should not be eager to come to their assistance when their patent is assailed, by granting them a remedy preliminary to final hearing. As was said by Lord Eldon in *Rundell* v. *Murray*, Jac. 311:

"Not only conduct with the party with whom the contest exists, but conduct with others, may influence the court in the exercise of its equitable jurisdiction by injunction."

This remark was cited with approval by Lord Cottenham in *Saunders* v. *Smith*, 3 Mylne & C. 711, 730. The patent, as reissued, is well calculated to suggest doubts as to its validity, and lead those who examine it to suppose that such an abuse of the statutory privilege cannot be tolerated. The officers of the complainant have only themselves to blame if others had acted on the assumption that the patent cannot stand. The defendant has acted upon this belief.

Under such circumstances the complainant should not have the stringent remedy applied for, and it is not only within the fair discretion, but it is the duty, of the court to deny preliminary relief, and leave the complainant to the ordinary relief at final hearing.