DUNHAM *v.* DENNISON MANUF'G CO.

*(Circuit Court, S. D. New York. December 20, 1889.)*

1. PATENTS FOR INVENTIONS—REISSUE OF LETTERS—EXPANSION OF CLAIMS.

In letters patent No. 277,245, granted May 8, 1883, to Joseph T. Dunham, the first claim is for "a combined tag and envelope, made substantially as herein shown and described, and consisting of an envelope having at one end a flap of sufficient size to cover one side of the envelope:" in such patent, as reissued, No. 10,488, June 10, 1884, the first and second claims are respectively for "a combined tag and envelope, * * * wherein the flap which closes the mouth of the envelope is fastened," etc., and for "a combined tag and envelope, * * * the flap having an eyelet hole, which, when the flap is folded down on the envelope, coincides with an eyelet hole in the envelope," etc. *Held*, that the latter claims, being so expanded as to be *no* longer limited to a flap of sufficient size to cover the envelope, as was the case in the original patent, are invalid, as including structures and improvements neither described nor claimed in the original.

2. SAME—EXTENT OF CLAIM—PRIOR STATE OF THE ART.

In letters patent No. 331,118, granted November 24, 1885, to Joseph T. Dunham, the first and second claims are, respectively, for "an envelope having a flap pro-

vided with a reinforced hole, and having a similar hole in the front ply of its body, the said holes constructed to register and coincide when the flap is folded down, whereby the end of the back ply of the envelope body, which extends entirely across the latter, is clamped and removably secured;" and for "a mailing tag and envelope having a flap folded over on and secured to the inner face of the front ply of the body, the said flap being also constructed to take over the free end of the back ply of the body, as shown, whereby the mouth of the envelope covered by the said flap is secured against accidental opening." *Held,* that in view of the prior state of the art, as shown by patent No. 81,926, granted September 8, 1868, to Sigmund Ullman, and other prior structures, the claims must be restricted to the form of envelope described in the patent, which is so constructed that the flap can be opened and the contents inspected without tearing the envelope or breaking the fastenings.

In Equity. Bill for infringement of patent.

*Walter S. Poor,* for complainant.

*W. W. Swan,* for defendant.

COXE, J. This is an equity action founded upon two letters patent granted to the complainant. The first, a reissued patent, No. 10,488, dated June 10, 1884, is for a combined tag and envelope, and the second, No. 331,118, dated November 24, 1885, is for an improvement in envelopes. The reissued patent will be first considered. The defenses are lack of novelty and invention, non-infringement, and that the reissue is void because of an unwarrantable expansion of its claims. The original patent, No. 277,245, was dated May 8, 1883. The application for the reissue was filed March 18, 1884,—10 months and 10 days thereafter. The invention of the original was limited, as clearly as the drawings and the language of the description and claims could limit it, to an envelope having at one end a flap of sufficient size to cover one side of the envelope. The inventor says: "The object of the invention is to form an envelope with an end flap covering its side, as hereinafter described. * * * An envelope, A, preferably made of strong waterproof paper, is provided with an end flap, B, of sufficient size to cover the entire envelope. An eyelet, C, is secured in that end of the envelope opposite to the one to which the flap, B, is attached, and the flap, B, is provided on its free end with an eyelet, D, which, when the flap, B, is folded over the envelope, rests upon the eyelet, C." He then describes the manner in which the name of the consignee is concealed by writing it on the inside of the flap, so that dealers, engaged in the same business, cannot ascertain the names of their rivals' customers. The name of the consignor is printed on the outer surface of the flap, where also appears the name of the city or town to which the goods are destined, and a notice to carriers that the full name of the consignee may be found on the inner surface. It is evident that the patentee considered this peculiar form of flap the main feature of his invention. It is also clear that an envelope which does not include a flap large enough to cover its side does not infringe the claims, which are as follows:

"(1) A combined tag and envelope made substantially as herein shown and described, and consisting of an envelope having at one end a flap of sufficient size to cover one side of the envelope, as set forth. (2) In a combined tag and envelope, the combination, with an envelope, A, having a flap, B, at one end, of the eyelet, D, in the free end of the flap, and the eyelet, C, in that end of

the envelope opposite the one to which the flap is attached, substantially as herein shown and described, and for the purpose set forth."

The specification is perfectly plain. There is no ambiguity about the description, and the claims, in language equally clear, cover what is said to be the invention, and the whole thereof.

Soon after the patent was granted, the defendant, in the summer of 1883, commenced manufacturing tag envelopes which the complainant insists are infringements of the reissue, but frankly admits that they do not infringe the original patent, for the reason that they do not have the flap, B. The reason for the reissue is thus stated in the complainant's brief:

"Soon after putting the patented article on the market, complainant was informed that defendant, a corporation that had for some time manufactured, in Boston, and made extensive sales throughout the country of a shipping tag, was manufacturing and selling a tag envelope similar to complainant's. Complainant immediately applied to counsel for the purpose of commencing suit against defendant, and was advised by such counsel, after an examination of his letters patent, and a statement of his invention and application, that his patent was defective, indefinite, and ambiguous in its claims, so as to render it practically inoperative, and that he had better apply for a reissue."

The patentee himself states that the alleged infringing envelope of the defendant was one of the forms "invented by him but not shown in his patent," and he, therefore, sought a reissue which would cover it.

Turning now to the reissue, it is manifest that the effort was to discard the flap, B, as an element of the invention and expand the claims sufficiently to cover an envelope, no matter what the size or shape of its flap. The invention no longer consists in "an envelope with an end flap covering its side," as in the original, but "in a tag provided with means for attaching it to the merchandise and with an envelope or pocket to receive a bill or invoice of the merchandise." The drawings are referred to as showing the invention "in its preferred form." The end flap is no longer "of sufficient size to cover the entire envelope," but it must cover it "substantially." The claims of the reissue are as follows:

"(1) A combined tag and envelope, substantially as described, wherein the flap which closes the mouth of the envelope is fastened down by the cord or other device which secures the tag to the merchandise, as set forth. (2) A combined tag and envelope, substantially as described, the flap having an eyelet hole which, when the flap is folded down on the envelope, coincides with an eyelet hole in the envelope, whereby the cord or hook for attaching the tag may be passed through both holes, substantially as set forth. (3) In a combined tag and envelope, the combination, with an envelope, A, having a flap, B, at one end, of the eyelet, D, in the free end of the flap, and the eyelet, C, in that end of the envelope opposite the one to which the flap is attached, substantially as herein shown and described, and for the purpose set forth."

The third claim of the reissue is the same as the second of the original, but it is not contended that this claim is infringed. Claims 1 and 2 of the reissue are unquestionably broadened. They are no longer limited to a flap of sufficient size to cover the entire envelope. Should the court hold that they are so limited it is admitted that they are not infringed. It is thought that these expanded claims cannot escape the force of the

repeated decisions of the supreme court relating to reissued patents. The patentee made no move until the defendant had produced its envelope, which could be sold without infringing the original patent. If he had been the first inventor of this new and improved form he might have described and claimed it in the original patent. He did neither. He now seeks by the reissue to include structures and improvements which were neither described nor claimed in the original. This he cannot do. The defendant has acquired valuable rights which cannot be trampled upon in this manner. The law upon the subject is too well settled to require a citation of authorities, but the case of *Coon* v. *Wilson*, 113 U. S. 268, 5 Sup. Ct. Rep. 537, seems peculiarly applicable and controlling. Substitute the nomenclature pertaining to envelopes for that relating to collars and the opinion in *Coon* v. *Wilson* is as applicable to this controversy as if written for the purposes of this action only:

"Although this reissue was applied for a little over *ten* months after the original patent was granted, the case is one where it is sought merely to enlarge the claim of the original patent, by repeating that claim and adding others; where no mistake or inadvertence is shown, so far as the *extended flap is* concerned; where the patentee waited until the defendant produced *its short-flapped envelope*, and then applied for such enlarged claims as to embrace the defendant's *envelope*, which was not covered by the claim of the original patent; and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original. As the rule is expressed in the recent case of *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174, a patent 'cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted.' But a clear mistake, inadvertently committed in the wording of the claim, is necessary, without reference to the length of time. In the present case, there was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering *an envelope not provided with the flap, B.*"

The second patent in controversy, No. 331,118, dated November 24, 1885, is for an improvement in envelopes intended for mailing samples, and similar matter, and for use as tags for marking goods to be shipped. The defenses are abandonment, lack of novelty and invention and non-infringement. The principal object of the invention, as stated in the specification, was to obviate the difficulty which existed in prior devices which were so constructed, that, in order to get at the contents of the envelope, it was necessary to untie the string or remove the fastening which secured the flap. The envelope of the patent is so constructed that the flap can be opened when desired and the contents inspected without tearing the envelope, or removing, or breaking the fastenings. The claims are as follows:

"(1) An envelope having a flap, C, provided with a reinforced hole, $c'$, and having a similar hole, $c$, in the front ply of its body, and the said holes constructed to register or coincide when the flap, C, is folded down, whereby the end of the back ply, $b$, of the envelope body, which extends entirely across the latter, is clamped and removably secured, substantially as shown and described. (2) A mailing and tag envelope having a flap, C, folded over on

and secured down to the inner face of the front ply of the body, the said flap being also constructed to take over the free end of the back ply of the body as shown, whereby the mouth of the envelope covered by the said flap, C, is secured against accidental opening, substantially as and for the purposes set forth."

In view of what was known when the patent was applied for a broad construction of these claims is out of the question. A construction which would include the defendant's envelope would render the claims void for lack of novelty, for the general features of the patented envelope are shown in the patent, No. 81,962, September 8, 1868, to Sigmund Ullman, and in other prior structures. If the claims are limited to the peculiar construction shown in the specification and drawings the defendant does not infringe. In the defendant's envelope one eyelet is used, which aids the gum in fastening the flap down permanently upon the back ply of the envelope. A large number of exhibits have been introduced showing the defendant's envelope. These have been changed and mutilated by the witnesses in illustrating opposing theories. But both sides, apparently, agree that the envelopes made by the defendant since the date of this patent are constructed with the eyeletted flap securely fastened. The complainant's brief contains this statement:

"After defendant put its tag envelope on the market it changed the construction several times, until it finally adopted the form introduced in evidence as the infringing specimen. See complainant's Exhibit 'Taylor and Mayo,' which was received in 1883, and also has the eyelet holes, with washers, only; also complainant's Exhibit 'John S. Smith,' which was received in 1884, and has the washers reinforced with a short metallic eyelet, with the eyeletted end tightly gummed down. Also, Exhibit 'Alonzo B. Smith,' received in 1886, with printed advertisement on front, which had the eyeletted end tightly gummed, with washers reinforced by short metallic eyelets."

Evidently, it is not intended that the defendant's envelope shall be opened and the contents removed at the end thus securely fastened. The bill or invoice is inserted at the opposite end; the flap at that end is then fastened down, in the well-known manner, by moistening the gum with which it is provided, or the flap may be tucked in between the plies. In other words, the defendant takes an ordinary envelope with the opening at one end, and at the other end, which is never intended to be opened, he puts an eyelet reinforced by washers through the front ply, a portion of the back ply, and the flap of the envelope. The sole object of the eyelet is to provide a suitable hole into which the cord or hook, which fastens the envelope to the merchandise, may be introduced. The effect of the eyelet and washers is to prevent the back ply from being left free at this end. The defendant has not the object of the patent in view and does not adopt the patented device. In complainant's envelope, according to the theory of his expert witness, "the leading idea or principle of the invention is the holding down of the back ply of the envelope by the overlapping of the flap thereon, and the omission of any permanent or secure attachment of the flap to said back ply. * * * The claims are limited to this end of the back ply being left free." This feature is entirely wanting in defendant's envelope. Instead of omitting

the secure attachment he has added the metallic eyelet and washers to the gum of the ordinary envelope. The claims must be restricted to the form and description of the patent, and thus construed they are not infringed.

It is unnecessary to examine the other defenses presented. The bill is dismissed.