## BERTELS v. TRETHAWAY.

(Circuit Court, M. D. Pennsylvania. January 29, 1910.)

### No. 34. October Term, 1907.

1. PATENTS (§§ 136, 138, 141*)—REISSUES—GROUND—DELAY—SCOPE.

To warrant a reissue of a patent, inadvertence, accident, or mistake must be shown, and there must be no unreasonable delay in applying for it. The claims may be narrowed or enlarged, but in either case they must be within the terms of the invention as it is specified and described in the original patent; the invention, although differently stated, remaining the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 198½, 201, 206–213; Dec. Dig. §§ 136, 138, 141.*]

2. PATENTS (§ 138*)—REISSUE—ESTOPPEL BY DELAY.

A delay of a year before applying for a reissue patent, the purpose of which was to avoid a limitation inadvertently inserted in a claim, did not invalidate the reissue as against an infringer, where he was notified of the infringement very shortly after the original patent was issued, and where the infringing device, although not within the claim of the patent as originally issued, strictly construed, was within the invention as described therein and within the claims of the reissue, which were warranted by the original specification.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 201–203; Dec. Dig. § 138.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CAN COVER FASTENER.

The Bertels patent, No. 802,677, and the reissue thereof, No. 12,629, for a can cover fastener, which consists of elongated buttons affixed centrally to the end of rivets or studs extending downward through the cover, the ends of which engage with the inturned edge or beaded rim of the can, the rivets having heads lying in countersinks in the cover by which the buttons are turned, and which are marked by a nick to indicate the position of the button, disclose patentable invention, and are infringed by a device differing only in that the heads of the rivets, instead of being nicked, are composed of two lugs which indicate the position of the button.

In Equity. Suit by Charles E. Bertels against Trethaway and others. On final hearing. Decree for complainant.

David P. Wolhaupter and P. A. Meixel, for complainants.

Edward T. Fenwick, W. J. Trembath, and H. A. Knapp, for defendants.

ARCHBALD, District Judge. The subject of suit is a can cover fastener. The original patent was granted to Charles E. Bertels, October 24, 1905, upon which there was a reissue April 9, 1907, on an application filed November 12, previous. The fastener consists of an elongated button affixed centrally to the end of a rivet or stud extending down through the top of the cover; the button reaching under and engaging with the inturned edge or beaded rim of the can, when the head of the rivet is turned, thus locking the can, which is unlocked by the reverse motion. To indicate whether the button is or is not engaged, there is a nick or slit in the head of the rivet, arranged lengthwise of the button; and in order to have the rivet head out of the way it is set in a countersink or inwardly projecting boss, which withdraws it below the top of the cover, an important consideration when it comes to piling or packing. For the more effective fastening of the cover two buttons, on opposite sides, are usually employed, and the beaded rim or edge extending all the way around, the buttons engage with it wherever they may happen to be, no particular point having thus to be selected in putting the cover on or taking it off. The device is an extremely handy one; the can and cover being assembled the same as any others, and being fastened or unfastened simply by turning the head of the rivet halfway around with any convenient tool.

The defendants' device is very similar. An engaging button at the end of a stud or rivet extending down through the top of the cover, and set in an inwardly projecting boss or countersink, is also employed; the button interlocking with the beaded edge or rim of the can when the head of the rivet is turned. The only distinction attempted is that the head of the rivet, instead of being solid, with a nick or slot longitudinal of the button, consists of two up-standing lugs, with a transverse notch or slit in between, which is at right angles to the button and not lengthwise of it; the rivet and button being turned by a key, which fits over the lugs, although it is capable of being turned by anything inserted between and bearing upon them. The defendants' rivet is forged by a single stroke, and is thus more easily manufactured than that of the complainants, in which the slit has to be cut

specially, after the head has been formed. But, whatever advantage of this kind there may be, it does not relieve the defendants from the infringement charged, as the most cursory consideration reveals. The lugs on the one, like the slit or nick on the other, are the means by which the button is turned, and it is of no consequence that a somewhat different tool or key is required, if that, indeed, is the fact. Neither does it matter that the complainants' nick is lengthwise of the button, while the defendants' slot is transverse. The relative position of the nick or slot and button is solely for the purpose of indicating whether the cover is fastened or unfastened, which, while more obvious, perhaps, when the two conform, is equally shown, however they are arranged, once it is understood. And in this view it is immaterial whether the original patent or the reissue is relied on; it being the relative and not the absolute position of the nick and button that is involved. The lugs of the defendants' device being equivalent in form and identical in function with the nick of the complainants', infringement is proved, which the slight variation introduced does not avoid. But to obviate any question, and because the original patent, in providing that the nick should be arranged lengthwise of the button, if taken literally, unnecessarily limited it, a reissue was applied for. The original patent had a single claim, which was as follows:

1. "The combination, with a receptacle having a wired edge disposed on the inner side thereof, of a cover having inward-projecting bosses, fastening devices, embodying buttons adapted to interlock with the edge, and rivets, rigidly connected with the buttons and having nicked heads disposed within the bosses, the nicks being arranged lengthwise of the buttons."

This was retained as the first claim of the reissue, and three others added.

2. "The combination, with a receptacle having an inturned edge, of a cover, cover-fastening devices, including buttons adapted to interlock with said inturned edge, and button-carrying members having nicked operating-heads shaped to indicate the positions of the buttons and bearing a definite relation thereto."

3. "The combination, with a receptacle having an inturned edge, of a flat cover stamped to form inward-projecting bosses, fastening devices, embodying buttons adapted to interlock with the inturned edge, and button-carrying members having tool-engaging heads disposed within the bosses and shaped to indicate the positions of the buttons."

4. "The combination, with a receptacle having an inturned edge, of a flat cover having inward-extending bosses and fastening devices, embodying buttons adapted to lock with the inturned edge, and button-carrying members having operating-heads located wholly within said recesses."

These claims, besides eliminating the limitation imposed by the position of the nick, introduce certain other minor changes, such as an inturned rolled can-edge, instead of a wired one, and tool-engaging or operating-heads for the rivets or fastening devices instead of nicked ones, all of which were unquestionably within the scope of the invention, as set out in the specifications, and therefore properly claimed in the reissue. But the requirement that the nicks should be lengthwise of the buttons, as called for in the original patent, if taken strictly, being a limitation, and the defendants having gone into business before the reissue was applied for, and the reissue having been admit-

tedly obtained for the purpose of removing the restriction and meeting the form devised by the defendants, it is claimed that, so far as they are concerned, the reissue is invalid, the rights acquired by them meantime being protected.

To warrant a reissue, inadvertence, accident, or mistake must be shown, and there must be no unreasonable delay in applying for it. The claims may be narrowed or enlarged, but in either case they must be within the terms of the invention as it is specified and described in the original patent; the invention, although differently stated, remaining the same. 30 Cyc. 919, 921, 923. The patentee in the present instance satisfied the Commissioner that the omission which he sought to correct was inadvertent, and nothing is suggested to call this in question; and the delay of a few days over a year, under ordinary circumstances, would not be unreasonable. The defendants also were notified, soon after the original patent was granted, late in 1905, that they were infringing on the rights of the complainants under it, and in going on in the face of that it cannot be said that they acquired rights which the reissue could not disturb because not sooner applied for.

It might be different, if no such warning was given, the failure of the complainants to assert their right to a reissue for a year or more after knowledge of the manufacture and use by others of a form of device apparently not covered by the invention as patented being calculated to mislead them into the belief that it was not thought to be within the scope of it. But where, as here, infringement of the original patent has been directly and promptly brought home to the parties, and the description of the invention, as set forth in the original, is broad enough to sustain the reissue, being affected with notice of the right to enlarge it which is so conveyed, and at the same time admonished that they are trespassing upon it, it cannot be claimed under these circumstances that they were mislead to their hurt by the inventor's inaction, the application for the reissue being made within a reasonable time thereafter. Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72.

The case is not like that of Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537, 28 L. Ed. 963, where the reissue was held invalid, although made within a little over three months after the original was granted; the rights of others having intervened meantime. Nor is the case in any view an authority that a delay of three months is too long; the question not being one of time, but of the character of the reissue. The difficulty there was that the claims of the reissue, as enlarged to embrace the defendants' device, were not, as they were required to be, expressive of the original invention, but were carried entirely beyond the scope of it, as a comparison of the original specifications with those of the reissue conclusively demonstrated. But by contrast with this in the present instance no change was found necessary, the claims of the reissue being abundantly sustained by the original specifications which were carried forward into it, the inventor in the original having been simply unnecessarily limited in the respect indicated.

It is true that the nick in the head of the rivet is described in the

specifications as disposed longitudinally of the button. But at the same time it clearly appears, as already pointed out, that this arrangement was designed for no other function or purpose than to indicate whether the button was in locked or unlocked position, which sufficiently paved the way for the provisions found in the second and third claims, where the heads are simply described by the function to be performed. The fourth claim, no doubt, is broader, all restrictions of this kind being removed. But the character of the head, or the disposition of it relative to the button, is not of the essence of the invention, which as declared in the specifications, and as fulfilled in practice, is to provide a simple and efficient form of fastener, which may be readily applied to the cover, and by inlocking with the edge or rim of the can may operate to positively hold can and cover together, a result which is realized without regard to the head of the rivet being indicative of the position of the button, or being given any particular functional character.

The question of the patentability of the device, however, is of some seriousness. Ingenuity no doubt is displayed, but does it show inventive genius? The use of a button, at the end of a stud or rivet extending through a cover or door and engaging with an interior edge or rim as a means of fastening it, is too ordinary and common an expedient in the experience and observation of every one to need the citation of anticipating references to negative its novelty; and, if that were all there was here, there would be no patentable invention. But, while the turn-button principle is the basis of the device, the subject to which it is applied and the way of doing so are both new and peculiar, which has to be considered. A sheet metal can cover, for which, according to the specifications, the fastening is particularly designed, has to fit snugly, and for the purpose of carriage needs to be well secured. The fastening ought also to be so arranged that, in taking the cover off and putting it on, can and cover can be easily and readily assembled. If fastened with a screw, or if hasps, hinges, or staples are employed, regard is required, in putting can and cover together, to the exact place where the fastening goes into engagement. With most of these appliances, also, there is a necessary exterior projection, which not only interferes with the piling and packing of the cans, but also exposes these fastenings to knocks and blows, which are liable to injure and displace them.

These were some of the things which the inventor had to contend with, and he has solved the problem in a cheap, simple, and efficient manner; the objectionable features, to which allusion has been made, being successfully avoided. As the rim of the can, with which the button engages, extends completely around it, the can and cover are assembled the same as any other; engagement being secured, without regard to the position of the fastener, by a mere turn of the button. And the same is true with regard to unfastening and disengaging them. The character of the fastener and its position with the cover are also features. The attachment of the rivet and button is rigid, and is secured by the mere up-set of the rivet, the shank of which completely fills, and in conjunction with the button tightly closes, the open-

ing in the cover through which it is inserted; and the head of the rivet being depressed in a countersink, or inwardly projecting boss stamped in the cover, while accessible for the purpose of turning the button, is removed out of the way of injuries or displacing contacts. It may be that all this is an adaptation, in which existing devices are drawn on; but it is, at the same time, an advance upon and development of them, which was not so obvious as to be ascribed to mechanical skill merely. To make an oft-repeated observation, the invention displayed may not be of a high order, but it is not altogether wanting.

Let a decree be drawn sustaining the patent and awarding an injunction and an accounting.