AMERICAN SODA-FOUNTAIN CO. v. ZWIETUSCH.

(Circuit Court, E. D. Wisconsin.  August 8, 1896.)

1. PATENTS—REISSUES—ENLARGEMENT OF CLAIMS—INADVERTENCE.
    Where both the recitals and claims of a patent for an improvement in soda-water fountains clearly and unmistakably referred to the style of apparatus having vertical sirup cans, and the claims mentioned only vertical cans, held that a subsequent reissue which included both vertical and horizontal cans was void for improper enlargement of the claims, where the same were thereby made to cover a new device invented and placed upon the market in the meantime by another, and that the testimony of the solicitor that in using the word "vertical," in the original, he had in mind merely the form of apparatus in which the cans were inserted from above, as distinguished from that in which they were inserted from in front, by sliding in like a drawer, was not a sufficient showing of inadvertence, accident, or mistake.

2. SAME—APPLICATION FOR REISSUE—LACHES.
    Lapse of time is only one of the elements to be considered on an application for reissue, and the fact that such an application is made less than 10 months from the issuance of the original will not warrant the insertion of claims deliberately omitted, without inadvertence, from the original, and where adverse rights have intervened.  Coon v. Wilson, 5 Sup. Ct. 537, 113 U. S. 268, applied.

3. SAME—SODA-WATER APPARATUS.
    Reissue No. 11,313, to Park, as assignee of Herron (original No. 452,-754), for an improvement in soda-water apparatus, is void for unwarranted enlargement of the claims.

This was a suit in equity by the American Soda-Fountain Company against Otto Zwietusch for alleged infringement of a patent for an improvement in soda-water apparatus.

The complainant is the owner of reissued letters patent No. 11,313, issued to Harvey S. Park, assignee of James B. Herron, March 14, 1893, for an improvement in soda-water apparatus; and the bill charges the defendant with infringement of the first, second, third, and sixth claims, viz.: "(1) In a soda-water fountain, an elevated can chamber, adapted to receive a sirup can from below, and mechanism for holding the can in position above the bottom, substantially as and for the purposes specified. (2) In a soda-water fountain, the combination of an elevated can chamber, receiving a sirup can from below; a front for such chamber; an opening below the front, and extending beneath the can chamber; a sirup can adapted to enter the open-

ing at the front; and a support for the can when raised for inserting, raising and holding a sirup can from below into its chamber at the front of the fountain, and above the bottom,—substantially as and for the purposes specified. (3) The combination, in a soda-water fountain, of a chamber receiving a sirup can from below; an open front for such chamber; a sirup can inserted through the open front, and raised to position from below; a support attached to the can; and a lock for the support when raised for holding the can in its raised position above the bottom,—substantially as and for the purposes specified." "(6) The combination, in a soda-water fountain, of a vertical sirup can inserted from below, and raised vertically at the front of a fountain; a support attached to the lower end of such can; a lock for the support when raised; and a spring located to bear against the front face of the sirup can when in its raised position, and prevent the forward tipping of such can,—substantially as specified."

The only defense taken into consideration for the purposes of this decision is that of invalidity of the reissue, because the scope of the original patent is unduly enlarged, under the circumstances shown. The original patent, No. 452,754, was granted May 19, 1891. It acknowledges the prior art, and states the object of the invention as follows: "There are now in use two well-recognized classes or forms of soda-water apparatus,—one in which vertical sirup cans are used, and the other in which horizontal sirup cans are used. The vertical sirup cans are inserted neck downward through the top of the fountain, and the horizontal cans are inserted by sliding them in and through the front of the fountain. The vertical cans possess the superior advantage of a free discharge of the sirup, and the horizontal cans possess the advantage of easy insertion and removal. The insertion and removal of the vertical cans are attended with the disadvantage of having to use a stepladder in order to get at the cans, and the removal of objects placed in the top of the fountain for ornamentation or other purpose; and the use of the horizontal cans is attended with the disadvantage of slow discharge of the sirup, and the liability of clogging the discharge. The object of the present invention is to construct a soda-water apparatus having all the advantages of both the vertical can and the horizontal can, without the disadvantages of either construction, to prevent the sweating of the fountain, to improve the construction of the sirup chamber in the fountain, to improve the sirup can and its attachment, and to improve generally the construction and operation of the fountain as a whole." All of the claims in the original patent which relate to the sirup cans, or to the can chamber, mention only vertical sirup cans, and an elevated can chamber. Of the claims contained in the reissue, and here alleged to have been infringed, the first is new matter, not found in the original; the second and third differ from corresponding claims in the original by omitting the words "vertical" and "vertically," as applied to the sirup can, and by having inserted in the same connection the words "above the bottom"; the sixth is unchanged. The reissue also contains the following matter not in the original, but distinctly new: "As will be seen, one part of my invention consists in providing an elevated can chamber, adapted to receive a sirup can from below; and, as to this feature, it is immaterial whether the cans themselves be vertical, inclined, or horizontal. In other words, one part of my invention contemplates raising the cans, and retaining them in position, above their point of insertion, and this without regard to the form of the cans themselves; the only essential thing, in this respect, being that the cans shall be capable of insertion from below, and of being afterward raised and held in fixed position above the bottom as desired. Inserting the can from below, and raising and holding it in fixed position above the bottom, being an essential feature of my invention, it will be understood that I do not, in all cases, intend to limit myself to minor or detail features, or to the use of cans of any particular form or construction." In the patent office the application for reissue was filed March 1, 1892. It was rejected by the examiner, after several hearings, because (1) of new matter expanding the claims; (2) of no case made of inadvertence, accident, or mistake; and (3) of references meeting the new claims. And on appeal to the board of examiners in chief this ruling was affirmed, opinions being filed in each hearing setting forth the grounds of rejection. Appeal

was then taken to the commissioner in person, resulting in the reissue, upon the following brief statement of his conclusions: "The claims are not met by the references. Under Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, applicant is entitled to broaden his claims by reissue, unless condemned by Dobson v. Lees, 11 Sup. Ct. 71, and such is not the fact. The decision of the board is reversed."

The defendant's device, alleged to be an infringement, conforms to the drawings and specifications in letters patent No. 476,589, for a soda-water fountain, granted to him June 7, 1892, on application made October 31, 1891, —prior, respectively, in point of time, to the application, and to the grant of complainant's reissue. The objects to be obtained are thus stated in the patent: "I aim to get the fullest possible effect from the ice employed; also to prevent sweating of the marble; also to provide the most convenient and effective means for inserting, retaining, and removing the sirup can; also to insure prompt and effective drainage; also to avoid lost space, to the end that the whole interior of the fountain may be made available for useful purposes; and also to provide various improved details of construction." Infringement of complainant's reissue patent is asserted in respect of the features and arrangement of the sirup cans and spring attachment. The sirup cans of defendant are distinctively of horizontal form; are placed in a horizontal position, and in a horizontal chamber, which is below the ice box, and not vertical, or in an elevated chamber in the front, as shown in complainant's drawings, and specified in its original patent. The cans are taken out and inserted from the front by an oblique movement. The spring is of old form in both, and its use is not entirely analogous in the two devices. The defendant claims to have invented his device in "the middle of the summer of 1891"; to have completed his first apparatus in November, 1891, and immediately thereafter placed them upon the market; and has had great success in their sale ever since. He had previously, in December, 1890, examined a soda-water fountain constructed in accordance with complainant's original patent. This horizontal form of sirup can, and relative position in the fountains, which appears in defendant's apparatus, is well shown in the Matthews horizontal can patent, granted in 1869. Whether it must be inferred from the drawings and specifications that the cans were removable at the front, or were to be taken out and inserted from above, by removing the ice box, is the subject of much controversy in the record; and models and drawings are produced which would at least raise a doubt, if dependent upon the critical exactness of the drawings, or clear expression in the specifications.

For a showing of "inadvertence, accident, or mistake" in the use of the word "vertical" in the claims of the original patent, the solicitor who conducted the proceedings testifies, in substance, that he had in mind, as the vertical type, the form of construction "in which the sirup can was placed in the fountain from above by raising the top or cover," and, as the horizontal type, that in which it was "inserted at the front, sliding in like a drawer," and that, in accordance with such understanding, the word "vertical" was there used "for the purpose of designating a construction in which the can, when in position for use, was supported or held in its raised chamber, in contradistinction to a can slid in from the front, on a floor or support."

Banning & Banning, for complainant.
Dyrenforth & Dyrenforth, for defendant.

SEAMAN, District Judge (after stating the facts). The original Herron patent, upon which the complainant's rights are founded, must be regarded as limiting the claim of invention, so far as relates to the feature of the sirup cans in a soda fountain, to the so-called "vertical" type or class therein distinctly recognized and described. Both recitals and claims are unmistakable in their showing of this purpose; and, if confirmation were needed, reference to the file wrapper and contents discloses numerous changes in the claims and argu-

ments thereupon, all of which. carefully avoid any assertion which would embrace the recognized horizontal type, either in form or position, and industriously preserve the vertical distinction.　This manifest intention on the part of the inventor and of his solicitor is referable, in my opinion, to their knowledge of, and fear of being brought into interference with, the prior patent, No. 98,176, called in the record "Matthews Horizontal Can Patent." There is much controversy in the testimony and arguments over this patent, whether it appears, either from the drawings or specifications, that the sirup cans were removable at the front, or through the top, of the fountain. Rival models are produced, which purport to have been made in exact conformity with the drawings, upon an enlarged scale,—the defendant's exhibit showing that the cans may be taken out and in through the door at the front, while complainant's model shows that the margin of space is insufficient to permit such removal; and the defendant further produces testimony of fine measurements and enlarged drawings tending to sustain his claim that if the drawings of the patent are followed literally there is a possibility of removal through the doorway.　These nice distinctions are immaterial, in the view which I take of the issue.　It is a well-known fact, frankly conceded by the able expert who testifies for complainant, that "patent-office drawings are not generally made to a scale or with the exactness of working drawings," and are not, therefore, calculated to meet the test of the utmost accuracy in measurement.　Upon their face, the drawings of the Matthews patent show the sirup cans of horizontal form and position, "entirely below the cooler," with a door immediately in their front, and in the lower front portion of the fountain.　The common-sense suggestion would seem to be that a way for the necessary and frequent removal of the sirup cans was thereby provided, rather than the inconvenient method of taking through the top, which would generally require the aid of a step-ladder, and would make it necessary to take out the ice box, which must be in some way released from the "cooling worm" shown to enter it.　The apparatus is not complicated, and I am satisfied that a mechanic attempting to follow the drawings for construction under it would infer, without the aid of specifications, that the cans were to pass through the door.　Its availability, if not absolute necessity, would be a sufficient definition of that purpose; and the absence of a statement to. that effect in the specifications would not send him into close measurements and comparison of parts·of which he was not authorized to infer exactness, to ascertain the intention.　For the purposes of this consideration, it is not essential to inquire into the validity of the Matthews patent,—whether its specifications are so clear that they actually pre-empt this method of employing horizontal sirup cans for introduction through the front of the fountain, —but simply to ascertain whether the plan and drawings gave clear disclosure of such method, and were so regarded and accepted by the subsequent inventor.　He could not then broaden his invention of a means for so introducing a vertical can as to include and monopolize the prior adaptation for the horizontal can.　It is evident that the applicant for the original Herron patent so treated the Matthews

device, and excluded from his application any claims which would comprise the horizontal feature, both to save conflict, and because he could not otherwise make the necessary oath that he was the first discoverer, and "does not know, and does not believe, that the same was ever before known or used." The application was prepared and prosecuted by a solicitor of experience and ability in the patent law, and it is fair to assume that the well-known requirements for the broad claim would have entered into it, but for the consciousness that this inventor was not prior in adopting this method for the recognized type of horizontal cans in a soda fountain. The defendant's device is clearly of the horizontal type, and strictly conforms to the letters patent of the United States, No. 476,589, granted to him June 7, 1892, on application filed October 31, 1891. Under the definitions above stated, his device was not an infringement of the original Herron patent. The doctrine of equivalents is not applicable to charge infringement of the claims there stated, in the light of the prior art, and the circumstances shown. And for the same reasons the sixth claim of the reissue patent is not infringed. But the terms of the first, second, and third claims of the reissue are so broadened that they would probably cover the defendant's device, and, upon that assumption, the only question is whether they are valid amendments to the original claim, by way of reissue. In my opinion, the answer to this inquiry is clearly pointed out by the uniform line of decisions of the supreme court in respect of the right of reissue, and the patent office was without authority to grant these claims. Upon the premises stated, the terms of the original patent distinctly excluded these broad claims, and therefore excluded any charge for this infringement founded thereon. As said in McClain v. Ortmayer, 141 U. S. 419, 422, 12 Sup. Ct. 77:

"Nothing is better settled in the law of patents than that the patentee may claim the whole, or only a part, of his invention, and that, if he only describe and claim a part, he is presumed to have abandoned the residue to the public."

For reasons which have been stated, the omission of any broad claims appears to have been intentional, and the attempt, by the testimony of the solicitor, to show mistake or inadvertence on his part in the interpretation of the word "vertical," is neither satisfactory nor plausible. In Dobson v. Lees, 137 U. S. 258, 265, 11 Sup. Ct. 73, the general rule is clearly stated:

"A reissue is an amendment, and cannot be allowed unless the imperfections in the original patent arose without fraud, and from inadvertence, accident, or mistake. Rev. St. § 4916. Hence the reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted."

In the argument for complainant, much stress is placed upon the fact that application for the reissue was made "within nine months and ten days after issuance of the original patent," and therefore within a time which many decisions have approved as not objectionable for laches. But this is only one of the elements to be considered on such application, and will not warrant a reissue to include claims which were deliberately omitted, without inadvertence, nor in

a case in which adverse rights of third parties had intervened. Several months prior to the application for this reissue, the defendant had not only perfected his apparatus and applied for his patent, but had placed the goods so made upon the market, and had obtained extensive sales and popularity; while there is no pretense that the complainant's construction has proved successful, or entered into general use. In this aspect, the case of Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 541, is clearly in point, both in the state of facts and the ruling. The unanimous opinion of the court is thus expressed, through Mr. Justice Blatchford:

"Although this reissue was applied for a little over three months after the original patent was granted, the case is one where it is sought mainly to enlarge the claim of the original patent by repeating that claim and adding others; where no mistake or inadvertence is shown, so far as the short or sectional bands are concerned; where the patentee waited until the defendants produced their continuous band collar, and then applied for such enlarged claims as to embrace the defendants' collar, which was not covered by the claim of the original patent; and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original."

In that case the original patent was for an improvement in collars, originally claiming only a collar with short or sectional bands; that is, a band along the lower edge of the collar, made in parts or sections, and having a graduated curve. In a reissue, certain claims were so amended as to cover a continuous band, with a graduated curve, but not in sections, and, so framed, would bring the defendants' collars, introduced meantime, into infringement. The case is apposite in every material respect, and the doctrine there pronounced— which is in accord with all the decisions, at least since Miller v. Brass Co., 104 U. S. 350—must control here. See Ives v. Sargent, 119 U. S. 652, 7 Sup. Ct. 436; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38. The final allowance of the reissue by the patent office appears to have been based upon Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; but I am unable to find support for it, either in the circumstances or the reasoning of that case. The numerous citations to that end in complainant's brief are plainly distinguishable, and do not apply to the state of facts presented here.

I am satisfied that the claims of the original patent were intentionally limited; that they were stated as broadly as the actual invention, and to the full extent intended by the applicant; that the amended claims enlarge the scope of the patent, and were so designed in the view and for the purpose of overreaching the defendant's device; and that the reissue is therefore void. It is true that the defendant had examined the original Herron patent, and an apparatus constructed under it, before making his own alleged invention; and on that fact counsel for complainant invokes the doctrine of "innocent purchasers for valuable consideration, and without notice," to bar this defendant from relief against the reissue. Any such general doctrine is clearly inapplicable, as there is no pretense that there was notice, either of any mistake in the claims, or of assertion at that time of enlarged claims, or of intention to apply for reissue. The bill must be dismissed for want of equity, and it is so ordered.