PFENNINGER v. HEUBNER.

(Circuit Court, E. D. Missouri.  January 26, 1900.)

No. 4,160.

1. PATENTS—REISSUE—LACHES AND FRAUD.

Complainant, after twice amending his application to meet objections of the patent office, accepted a patent limited by such amendments to a device of a particular construction, in connection with other old and well-known elements.  Nineteen months afterwards, and after he had examined a device constructed and successfully operated by defendant, he applied for and obtained a reissue on the ground that through "inadvertence, accident, or mistake" he had not correctly stated his claim in his original application, and in such reissue he broadened his claim so as to cover the device of the defendant.  *Held,* that after a delay for such a length of time, and under the circumstances shown, the application for reissue could not be considered as having been made in good faith, and the reissue was void.

2. SAME—IMPROVED BAKERS' OVENS.

The Pfenninger reissue, No. 11,439 (original patent No. 437,018), for an improvement in bakers' ovens, *held* void for laches and fraud in applying for reissue.

This was a suit in equity for infringement of a patent.  On final hearing.

Chas. F. Kellar, John J. O'Donohue, and James P. Kerr, for complainant.

Geo. H. Knight, for defendant.

ADAMS, District Judge.  This suit is brought to restrain an alleged infringement of reissued letters patent of the United States No. 11,439, granted to complainant September 4, 1894.  The patent is for an improvement in bakers' ovens.  The first claim, which alone is charged to be infringed by the defendant, is as follows:

(1) A bake oven comprising a suitable fire box, a horizontal combustion flue leading therefrom, take-up flues communicating with the rear of said horizontal flue, a second horizontal flue leading from said take-up flues to the front of the oven, an exit and take-up flue leading from said second horizontal flue, a baking compartment passing entirely through the oven, and open at both ends, interposed between the walls of the horizontal flues, and having its corners contiguous to the taking-up flues, and suitable means for guiding and suspending the materials to be baked above the floor of the baking compartment, substantially as set forth.

This claim, when analyzed, discloses a combination of the following distinct elements:  (1) A fire box; (2) a horizontal flue leading from the fire box; (3) uptake flues communicating with the rear end of the horizontal flue; (4) a second horizontal flue leading from the uptake flues to the front of the oven; (5) an uptake flue leading from the last-mentioned horizontal flue; (6) a baking chamber located between the horizontal flues, and which extends the full length of the oven, and is open at both ends, with its corners contiguous to the uptake flues; and (7) means for guiding and suspending the material to be baked over the floor of the baking chamber.  The defenses are want of novelty, laches and fraud in applying for and securing the reissue, abandonment, and noninfringement.  Briefly described, complainant's oven consists of a baking chamber extend-

ing the full length of the oven, and open at both ends. Beneath the baking chamber is a horizontal flue extending from the fire box at one end of the oven to vertical flues at the other end of the oven. The vertical flues extend upward on each side of the baking chamber to another horizontal flue located over the baking chamber. This latter flue extends back to the fire box end of the oven, and there communicates with other vertical flues through which the products of combustion are delivered either to a chamber at the fire-box end of the oven, or through a third horizontal flue to a chamber at the other end of the oven. Vertically adjustable ridges are arranged in the baking oven, upon which the pans are supported and guided through the chamber. A true interpretation of this reissue necessarily involves a consideration of the original patent, No. 437,018. This was granted to complainant April 19, 1892, on an application filed October 21, 1891. The history of this original patent, as disclosed by the file wrapper, shows that, as originally applied for, the patentee undertook to secure a patent on the arrangement of flues, hot-air passages, and oven, substantially as shown in the first six elements of the reissued patent. Upon certain references made by the patent office, the original and first amended claims were disallowed, and the patent was ultimately granted upon a claim for a particular construction of a device, in connection with the flues and air passages referred to in the disallowed claims, for elevating or lowering the track ridges which support the baking pans in their progress through the oven in the process of baking. The specification of the original patent shows that the importance of this device arose out of the necessity of frequently elevating the pans above the floor of the oven to decrease the temperature of the pans, and also of frequently lowering them again for the purpose of increasing the temperature when required. To accomplish this object, quite an elaborate mechanism, consisting of tracks, levers, cams, chain wheels, and endless chain, are described, and made the essence of the first claim. It is sufficient for the present purpose to say that a particular device was described, claimed, and allowed in the original patent to accomplish the important purpose of raising and lowering the pans in the process of baking. This specific device does not cover the defendant's device, which is now claimed to infringe the first claim of the reissue. The proof shows that in the summer of the year 1893 the defendant constructed and commenced to use the oven he is now using, and that he applied for a patent thereon on September 28, 1893. In August, 1893, the complainant saw defendant's oven, and observed its mode of operation. As already said, this oven of the defendant's did not infringe the claims of the complainant's original patent. It showed a mechanism for suspending the pans above the floor of the oven essentially different from the particular device of complainant's original patent for that purpose. On November 28, 1893, complainant filed an application for a reissue of his original patent under the provisions of section 4916 of the Revised Statutes, claiming that through "inadvertence, accident, or mistake" he did not correctly state or claim the invention in his original application. After defendant, in September, 1893, applied

for a patent on his oven as his own invention, the complainant filed an application for the same, claiming that he was the original inventor thereof. An interference was declared in the patent office, which resulted, in 1896, in sustaining the defendant's pretensions, and a patent (No. 552,838) was issued to him covering the device now alleged by complainant to be an infringement of his reissue patent.

It thus appears that complainant waited 19 months after the grant of his original patent before he so discovered his "inadvertence, accident, or mistake" as to apply for a correction in the shape of a reissue, and that during this time the defendant devised the oven now claimed to be an infringement of the reissue, and put it into successful operation. It also appears that the complainant saw and observed the operation of defendant's device before he became aware of his "inadvertence, accident, or mistake." The reissue, as applied for and as granted, claimed (instead of the particular construction as found in the original patent) broadly "any suitable means for guiding and suspending the materials to be baked above the floor of the baking compartment." This broad claim, unless held invalid for want of novelty, would probably cover the defendant's device. The question now is whether the reissue granted under these circumstances, and with this effect, is valid. The claim of complainant's original patent, as already seen, was limited to a special and particular form of carrier in a combination with a then well-known oven. After observing defendant's oven, and realizing, as he must have done, that his own patent, by reason of its limitation, did not cover defendant's construction, the complainant applied for a reissue of his original patent on claims broad enough probably to cover the same. The file wrapper of the original patent showing the original claims, amendments, and subsequent acceptance of the patent with a limitation to a particular form of carrier, in my opinion, shows careful, discriminating, and intelligent action on the part of the patentee, the complainant in this case, quite inconsistent with his present contention. He voluntarily accepted a grant so narrowed and limited by the action of the patent office as conclusively estopped him from subsequently claiming to the contrary. I believe his original patent fairly shows his actual invention, and certainly all of it, which, by his own voluntary action in accepting limitations, he did not abandon to the public. I am satisfied from the proof in this case that complainant's alleged "inadvertence, accident, or mistake" is an afterthought, inspired, 16 months after his original patent was issued, by observing defendant's successfully operating device, consisting of an endless carrier in a rotary oven constructed so as to occupy a medium position in the oven above its floor, and specially inspired by a cupidity to appropriate the same to his own exclusive use. Between the date of the issue of complainant's original patent and the date of his application for a reissue 19 months expired, during which time defendant's rights supervened. This was too long a time, under the circumstances of the case, to permit him to consume in discovering that he had made a mistake. I am satisfied that complainant's proceedings to secure a reissue were not made in good faith to correct an error, but in bad faith to overreach

a competitor. Under such circumstances the reissue, amounting, so far as the claim in question is concerned, to nothing more than a broadening of the claim of the original patent for the palpable purpose of monopolizing the device of the defendant, cannot be valid. Soda-Fountain Co. v. Zwietusch (C. C.) 75 Fed. 573; Id., 29 C. C. A. 506, 85 Fed. 968; Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537, 28 L. Ed. 963; Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, and 6 Sup. Ct. 451, 28 L. Ed. 665; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38, 31 L. Ed. 100; Yale Lock Mfg. Co. v. Berkshire Nat. Bank, 135 U. S. 342, 10 Sup. Ct. 884, 34 L. Ed. 168; Topliff v. Topliff, 145 U. S. 156-169, 12 Sup. Ct. 825, 36 L. Ed. 658; Freeman v. Asmus, 145 U. S. 226, 12 Sup. Ct. 939, 36 L. Ed. 685.

The view already taken with respect to the validity of the reissue supersedes the necessity of considering the other defenses made in the case. The bill must be dismissed.