J. A. WILLOUGHBY, *Receiver of the Capitol National Bank,*
v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *a
corporation.*

(Filed February 15, 1906.)

CONTRACTS—Construed as a Whole—Estoppel—Surety Bonds. In
an action upon contract, the party seeking to recover can not
claim the benefits thereunder, and at the same time repudiate
the burden. So in an action against a surety company to re-
cover on the bond of a defaulting bank president, the bond must
be construed as a whole, and the plaintiff's right to recover must
depend upon such a construction; and where such bond is issued
by the surety company and accepted by the bank, upon the faith
of certain statements and representations in writing, made by the
assistant cashier of the bank, relative to the conduct, duties,
employment and accounts of the defaulting bank president, and
such statements so made by the said assistant cashier are, by
the terms of said bond, made a part of the bond itself, the bond
and statements together form the contract, and they must be con-
strued together, and upon their joint construction, or upon their
construction as a whole, must depend the rights and liabilities of
the parties thereto; and where the bond is issued by the surety
company and accepted by the bank upon the faith of the state-
ments and representations so made by the assistant cashier, the
receiver of the bank, later appointed, in an action on the bond,
can not be heard to repudiate or question the authority of the as-
sistant cashier to bind the bank by his statements and represen-
tations concerning the conduct, duties, employment and ac-
counts of the defaulting bank president, and at the same time be
allowed to recover on the bond procured on the strength of the
statements and representations so made by the said assistant
cashier.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before
J. L. Pancoast, Trial Judge.*

*Flynn & Ames,* for plaintiff in error.

*Lawrence & Huston,* and *Dale & Bierer,* for defendant
in error.

Opinion of the court by

GILLETTE, J.:   In this case, the plaintiff, J. A. Willough-
by, as receiver of the Capitol National Bank of Guthrie, sues
the Fidelity and Deposit Company of Maryland upon the bond
of the defendant company, guarantying the faithful dis-
charge of the duties of Chas. E. Billingsley, as president of
the Capitol National Bank.

A copy of the bond with all its endorsements is attached
to and made a part of the plaintiff's petition.   The bond pro-
vides among other things:

"Amount, $10,000.00.   Annual premium, $40.00.   Bal-
timore, Md.

"Whereas Chas. E. Billingsley, Guthrie, Ok., hereafter
called the 'employee' has been appointed to the position of
president, in service of the Capitol National Bank, Guthrie,
Oklahoma, hereafter called the 'employer' and whereas, the
the employer has delivered to the Fidelity Deposit Co. of Md.,
a corporation of the state of Maryland, hereafter called the
'Company,' certain statements in writing relative to the em-
ployee, his conduct, duties, employment and accounts, the
manner of conducting the business of the employer, and other
things connected with the issuance of this bond, which, to-
gether with any other statements in writing, hereafter made
by the employer to the company relating to any such matters,
do and shall constitute the basis and form part of this contract
or any continuation thereof, and shall be warranted, and it
is hereby agreed that any such statement, made in writing by
the president, cashier, or any officer or director of the employ-
er, shall be considered the statements of the employer within
the meaning hereof.

"Now, therefore, in consideration of the sum of $40.00
paid as premium for the period from January 1, 1904, to Jan-

uary 1, 1905, at twelve o'clock noon, and upon the faith of said warranties of said employer as aforesaid, it is hereby agreed that, subject to the obligations imposed by this bond, on the employer, the performance of which shall be condition precedent to the right on the part of the employer to recover under this bond, the company shall, at the expiration of three months next after proof of a pecuniary loss as hereinafter mentioned, has been given to the company, reimburse the employer to the extent of the sum of $10,000.00, and no further for such pecuniary loss of money, securities or other personal property, as the employer shall have sustained by any dishonest act or acts committed by the employee in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, or of such other office or position as employee may be subsequently appointed to or called upon to fill by the employer, as such duties have been or may hereafter be stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered at any time within six months after the expiration or cancellation of this bond, or in case of the death, resignation or removal of the employee, prior to the expiration or cancellation of the bond, within six months after such death, resignation or removal."

Then follows conditions of the bond that are not material in the consideration of this case.

The defendant surety company answered admitting the giving of the bond, but denying liability, because, as it claimed the bond was procured by false and fraudulent representations made by the Capitol National Bank to the defendant surety company, concerning the said Chas. E. Billinglsey, his conduct, duties, employment and accounts. A copy of the letter of the defendant surety company to the Capitol National Bank, asking for information, together with such of the ques-

tions, answers and statements made by R. S. Briggs, the assistant cashier, as are necessary for the consideration of this case, are as follows:

"Baltimore, December 5th, 1903.
"To the Capitol National Bank,
"Guthrie, O. T.

"An application has been made to this company to issue to you a Fidelity Bond for Mr. C. E. Billingsley, as President in your service at Guthrie, O. T., to the amount of $————. Before passing on the said application the company must have answers to the following questions.

"Very respectfully yours,

"Edwin Warfield,

"President.

"5. (a)   Is he now (C. E. Billingsley) or has been from any cause indebted to the bank or its officers

"(a)   No.

"(b)   If so, give particulars, stating amount, how incurred, and how payment is secured.

"Not answered."

"It is agreed that the above answers shall be warranties, and shall constitute the basis and form part of the bond, or any continuation or continuations of the same that may be issued by the Fidelity and Deposit Company of Maryland, to the undersigned upon the person above named, and it is agreed that the duties, powers and remunerations of the employee and obligations of the employer as stated in the above warranty shall remain unchanged during the currency of this bond or any continuation or continuations thereof.

"Dated at Guthrie this 22nd day of December, 1903.

"Capitol National Bank.
"By R. S. Briggs,
"Ass't Cashier, Official Capacity.

"This must be returned to the home office, Baltimore. Md., before bond will be issued."

The reply is an unverified general denial, and a special denial of the authority of R. S. Briggs, the assistant cashier, to bind the bank by his answers to said questions, and by the agreement he undertook to make on behalf of the bank.

Upon the trial of the cause it was shown by the plaintiff, and by the proper cross examination of plaintiff's witnesses, that notwithstanding the statements of said R. S. Briggs, the assistant cashier, in answer to question 5 a, that Mr. Billingsley was not indebted to the bank, he was at the time the statement was made indebted to the bank on his own note of $5150.00, and his own overdraft of $35,693.24.

The bond given by the defendant surety company and accepted by the bank expressly provided that the statements in writing relative to C. E. Billingsley, his conduct, duties, employment and account, and other things connected with the issuance of the bond, should constitute the basis, and from a part of the contract, and should be warranted; and that any statements made in writing by any officer of the bank should be considered the statements of the bank; and in consideration of the sum of $40.00, and upon the faith of such warranties of the said bank the $10,000.00 bond sued on herein was given by the surety company, and accepted by the bank. When the plaintiff rested, the defendant surety company demurred to the evidence upon the ground that the plaintiff had failed to prove facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. The demurrer to the evidence was sustained, and the case dismissed at the cost of the plaintiff, and he

brings it to this court claiming that the trial court erred in sustaining the demurrer.

In this court the plaintiff contends that whatever his rights might have proved to be upon a full and final hearing, the demurrer to the evidence was not well taken, and should not have been sustained, based as it was, on the pleadings and plaintiff's evidence alone. Let us examine for a moment the issues and status of the case when plaintiff rested, and the demurrer was interposed by the defendant, and sustained by the court.

A copy of the bond sued on was attached to and made a part of the plaintiff's petition, and was admitted by the defendant in its answer, so it was fully before the court. The questions and answers thereto, as made by the cashier, and the statements attached to them, were attached to and made a part of the defendant's answer, and not being denied under oath under section 3986 of our statutes of 1893, were taken as true, and therefore were fully before the court. By the terms of the bond itself these questions and answers, and the statement attached thereto were made a part of the bond, and constituted the basis of the contract, and were stipulated to be warranties; and upon the faith of such warranties the bond was issued by the surety company, and accepted by the bank.

The pleadings and evidence also disclosed that in December, 1903, application was made to the defendant surety company for this bond for C. E. Billingsley, as president of the Capitol National Bank; that the surety company by its letter of December 5th submitted certain questions to the

bank to be answered by it; that on December 22, 1903, the questions were answered by R. S. Briggs, the assistant cashier of the bank, and he answered them falsely, knowing at the time that the answers were false; that on December 30, 1903, the defendant surety company issued its bond and the bank accepted it, upon the express written condition contained in the body of the bond itself, that the statements, answers, and representations so made should constitute the basis, and form a part of the contract; and that the bond was issued by the surety company and accepted by the bank upon the faith of the said warranty and representations; that during the years covered by the life of the bond the doors of the bank were closed, and it was placed in the hands of a receiver, and later the receiver brought this action to recover from the surety company on the bond in question, claiming that the said C. E. Billingsley, the bonded president, had defaulted in a sum far in excess of the amount of the bond.

In this condition of the case we think the question was fairly presented upon the demurrer to the evidence as to whether or not a cause of action had been proved in favor of the plaintiff, and against the defendant. A careful examination of the record has convinced us that the plaintiff did not make out his case, and that the demurrer to the evidence was well taken and properly sustained. We shall base our conclusion upon but one of the grounds urged in the court below.

Fidelity and guaranty insurance is of comparatively modern origin, and has not had the consideration in the books that has been bestowed upon fire and life insurance. But while it is of but comparatively modern origin, it is

nevertheless already a thoroughly established and legitimate line of insurance that has come to stay, and indeed is filling a most important part in the modern business world. From reason and analogy, however, it is plain that many of the principles underlying and governing fire and life insurance must apply to fidelity and guaranty insurance.

It has long been the settled law in fire and life insurance that where statements and representations have been used by the insured as the basis for the insurance, and by the terms of the policy issued and accepted, said statements are made a part of the policy itself, any material false and fraudulent statement made by the insured will avoid the policy. The reason for this rule is sound. A person unsound in body or mind, who falsely and knowingly represents himself to be sound physically, in order to secure life insurance, and stipulates that his false representations shall be treated as warranties, and as part of the policy itself, should not be allowed to recover. The man seeking fire insurance who falsely and knowingly represents his property to be free from incumbrance when it is incumbered for more than its value, and such false representations are made a part of the policy of insurance, should not be allowed to recover for a loss by fire, for reasons too apparent to admit of consideration here

In the case of *Dwight et al., v. The Germania Life Insurance Co.,* 103 N. Y. 341, the court says:

"Where the assured, in a policy of life insurance, warrants the truth of the answers made by him to questions in his application, compliance with such warranty is a condition of the validity of the contract of insurance, and it must be assumed that any substantial deviation from truth in such answers is material to the risk and renders the policy void."

Also see the following cases, and cases cited therein: *Price v. Phoenix Mutual Life Insurance Co.,* 17 Minn. 473; *Jefferson v. Economic Mutual Life Ins. Co.,* 22 Wall. 47.

We are not entirely without precedent in fidelity guaranty insurance cases. In the case of the *American Credit Indemnity Company v. Correllton Furniture Manufacturing Co.,* 95 Fed. 111, this language is used:

"When there is a definite agreement that the application for insurance is a part of the contract, and the statements in the application are expressly declared to be warranties, they are treated as such, and not merely as representations, and must be strictly construed, or the policy will not take effect."

See also *Hunt v. Fidelity and Casualty Co.,* 99 Fed. 442, and authorities there cited. In the Hunt case, the court says:

"The promissory statement, having been made a part of the contract, between the parties, by the terms both of the policy and the declarations, was, in effect, a warranty, which the assured was bound to fulfill in substance and according to its meaning. *Jeffries v. Insurance Company,* 22 Wall 53, 22 Law Ed. 833; *Insurance Co. v. France,* 91 U. S. 513, 22 Law Ed. 401; *Brandy v. Association,* 9 C. C. A. 252, 6th L. Fed. 727; *Mo. K. T. Trust Co. v. Herman National Bank,* 23 C. C. A. 65, 77th Fed. 117. It is quite immaterial that the statement is not called warranty. It is a stipulation embodied in the contract by the words of the policy for the performances of future acts, and, as such, is an express authority."

We are aware that many cases may be found in the books where doubts arise as to whether the warranties made by the assured were untrue as made, or were made in good faith and doubts yet remain of their untruth. In such cases a

disputed question of fact arises for the jury to determine. A few courts have gone so far as to hold that the fact that the warranties when made were false is not enough, but that it must be further shown that they were also known to be false by the assured; but the great weight of authority holds that proof of the material falsity of the warranties defeats the right of recovery.

In the case at bar however we are not called on to make any fine distinction. The representations of the assistant cashier, which were contracted to be warranties, were that C. E. Billingsley, the defaulting president, was not indebted to the bank in any sum. These warranties were outrageously untrue, and were known to be untrue by the assistant cashier when he made them, as shown by his evidenc. At the time he represented that said Billingsley did. not owe the bank, he, Billingsley, was indebted to the bank on his own note of $5151.00 and interest, and on his own overdraft in the sum of $35,693.34.

Slight or immaterial errors may be conceded not to avoid the liability of the surety company, ·but with such glaring misrepresentations as the above, the court need only to look to the face of the transaction to detect its bad faith, when in connection with the testimony of the assistant cashier, that he knew of the above indebtedness of C. E. Billingsley, when he represented to the surety company that said Billingsley was not indebted to the bank at all.

But we are not confined, in the case at bar, to the authorities of life and fire insurance alone, as many cases have arisen and have been passed on, not only by the state courts, but by the supreme court of the United States two of which will later be considered in the discussion of the second ques-

tion presented in this case. *The Guaranty Company v Me-chanics, etc., Co.,* 183 U. S. 402; *Fidelity Deposit Company v. Courtney,* 186 U. S., 342.

This leads us to the second point necessary to our consideration. It is claimed by the plaintiff in error that even though it be true that wilful, false statements made by one seeking fidelity insurance, which are made the basis of and form a part of the bond itself, may defeat the plaintiff's rights to recover, yet such a proposition can have no application to the case at bar, and cannot affect the rights of the plaintiff in this action, for the reason that the said Briggs, the assistant cashier, had no authority to make said statements, or to bind the bank in any way, and that, as he was only the assistant cashier, no presumption arises that he acted with authority, and his authority to act was not shown in the trial of the case.

This bond was issued by the defendant surety company and accepted by the bank upon the faith of the correctness of the statements, and said statements were made warranties and became a part of the bond itself, and so became and were a part of the contract sued on by the plaintiff. It is the well settled law that a party seeking to recover upon a contract cannot claim the benefits arising therefrom, and at the same time repudiate its burdens. To allow the receiver of the bank, while suing on the contract, to question the authority of the assistant cashier to make the statements and misrepresentations which are a part of the contract sued on, would be to allow him to accept its benefits and reject its burdens. To secure the bond on which its receiver sues, the bank by its assistant cashier, made the representations which form a part of the bond itself, and it does not lie in the

mouth of the receiver, while suing on the bond, to repudiate the statements and warranties made by the assistant cashier upon which the bond was secured. The supreme court of the United States has said:

"The information solicited was such as was proper to be asked of and communicated by the bank, and as the renewal was presumably made upon the faith of the statements contained in the certificate, the bank ought not to be heard, while seeking to obtain the benefits of the stipulation agreed to be performed by the surety, to deny the authority of its officers to make the representations which induced the surety to again bind itself to be answerable for the faithful performance by McKnight of the duties of his employment." *Fidelity Deposit Co. v. Courtney,* 186 U. S. 242; *Railway Companies v. Keokuk Bridge Co.,* 131 U. S. 371.

The plaintiff in error lays great stress upon the case of *The American Surety Co. v. Pauley,* 170 U. S. 134. That was a case wherein Geo. N. O'Brien, as cashier of the California National Bank sought and secured an indemnity bond from the surety company in the sum of $15,000.00. In his negotiations for this bond he transmitted to the surety company a strong letter of recommendation from one J. W. Collins, the president of said bank. Collins also secured from said surety company a $25000.00 bond for himself. During the life of these bonds O'Brien and Collins, acting together, wrecked the bank, and its doors were closed. The surety company refused payment, and suit was brought against it. It was contended that the president of the bank had made false representations concerning O'Brien, his conduct, his character, accounts and integrity, in order to enable O'Brien to secure the bond, and that the receiver of the bank should not be allowed to recover on the bond secured by the fraud

of the president, but the court held the surety company liable, and upon the authority in that case, the plaintiff in error maintains that the surety company in this case should also be held liable. In that case the court said:

"None of the cases cited embrace the present one. In the first place the procuring of a bond for O'Brien in order that he might become qualified to act as cashier, was no part of the business of the bank, nor within the scope of any duty imposed upon Collins as president of the bank. It was the business of O'Brien to obtain and present an acceptable bond. And it was for the bank by its constituted authorities to accept or reject the bond so presented. The bank did not authorize Collins to give nor was it aware he gave, nor was he entitled by virtue of his office as president to sign any certificate as to the efficiency, fidelity or integrity of O'Brien. No relationship existed between the bank and the surety company until O'Brien presented to the former the bond in suit.

"What, therefore, Collins assumed in his capacity as president to certify as to O'Brien's fidelity and integrity, was not within the course of the business of the bank nor within any authority he possessed. He could not create such authority by assuming to have it."

It will be noted that the court here decides that the recommendation of the president of the bank was not authorized by the bank itself, and that being outside of the scope of the duties and authority of the president, the recommendation is held not to be that of the bank, and hence not binding upon the bank. But it will also be noted that the court says that no relationship existed between the bank and the surety company until O'Brien presented to the bank the bond in suit. Under such circumstances we think the conclusion of the court entirely in accord with the great weight of authorities, and were the facts in the case at bar in accord with those in

the Pauley case, we would regard it as a case in point and controlling.

But in the case now under consideration it is not true that no relations existed between the bank and the surety company until C. E. Billingsley presented his bond to the bank. On the other hand application having been made to the surety company for a bond, the surety company on December 5, 1903, wrote to the bank the letter of inquiry which we have hereinbefore set forth. The letter of inquiry, it will be noted, was addressed to the bank and not to R. S. Briggs, the assistant cashier. The assistant cashier, on December 22, 1903, answered the questions and falsely stated that C. E. Billingsley was not indebted to the bank in any sum. He also signed the agreement following the questions, and a part of the same document, agreeing that the answers to the questions should be warranties and constitute the basis, and form a part of the bond to be issued by the surety company. All this occurred prior to the issuance of the bond, while in the Pauley case no letter of inquiry was addressed to the bank, and it was not agreed that the statements of the president upon which the bond was obtained should constitute warranties and be the basis for the bond. In short, no relations existed between the bank and the surety company until O'Brien presented his bond to the bank. When the bond of C. E. Billingsley, in the case at bar, was later issued on the 30th day of December, 1903, it expressly provided that in consideration of the sum of $40.00, and upon the faith of the warranties of the said bank (referring to the warranty signed by R. S. Briggs, cashier) the bond was issued. Not only, then, was the bond issued on the faith of the correctness of the answers and statements of the assistant cashier, but it

was also accepted by the bank upon the faith of the correctness of said statements. We think that these facts take this case entirely outside of the rule laid down in the Pauley case.

Nor are we alone in this conclusion, for the question has been twice before the supreme court of the United States in more recent cases than the Pauley case, and in these subsequent cases that case has been distinguished to such an extent that it cannot, as we have heretofore said, fairly be regarded as a case applying here. In the case of the *Guaranty Co. v. Mechanics, etc., Co.,* 183  U. S. 402,  Chief Justice Fuller uses this language:

"It also results that there can be no recovery at all on the cashier's bond.  If the bank had observed the stipulation in the teller's bond, to which we have referred, it is obvious there would have been no cashier's bond, and the question would not have arisen, but this it did not do, and the bond was given.  The bond provided that the company covenanted with the bank in reliance on the statements and declaration of the president and on behalf of the bank, and on the bank's strict observance of the contract; that any misstatement of a material fact in the declaration should invalidate the bond, etc.; that any written answers or statements made by or on behalf of said employer in regard to or in connection with the conduct, duties, accounts or methods of supervision of the said employe delivered to the company either prior to the issue of this bond, or any renewal thereof, or at any time during its currency, should be held to be warranties thereof, and form a basis  of this guaranty,  or of its  continuance. The statements were required to be and were made on behalf of the bank, and the president acted for the bank in doing so; and the bonds were procured by the bank, and the bank paid the premium.  There can be no doubt that the bank was responsible for the representations of its cashier in the one instance, and its  president in the other,  in  procuring these

contracts of indemnity. The representations made in the declaration on which the cashier's bond was issued were clearly misrepresentations. In Pauley's case, the president and cashier were confederates in the dishonesty of the cashier, for the purpose of defrauding the bank; and also it was held no part of the duties of the president, under the circumstances there disclosed, to certify the integrity of the cashier as he did."

In the still later case of *Fidelity Deposit Co. v. Courtney*, 186 U. S., 342, Justice White says:

"In *Guaranty Co. v. Mechanics, etc., Co.*, 183 U. S. 402, this court recognize as binding upon the bank a certificate given by one of its officers, embodying replies to questions asked by the guaranty company respecting one of the employees of the bank, although no proof was int·oduced that special authority had been conferred upon the officer to make the certificate. Nor does the ruling in *American Surety Company v. Pauley*, 170 U. S., 156, warrant the claim that it is an authority against the admissibility of the certificate here in question. In the bond considered in the Pauley case, it was not agreed that the statements of the president upon which the bond was obtained, should be the basis of the bond. The answers made by the person who was president of the bank to the interrogatories of the surety company were but mere commendation by one individual of another individual, at a time when, as said by the court, 'no relations existed between the bank and the surety company.' Again, in the Pauley case, no letter of inquiry was addressed to the bank, unlike the practice pursued with respect to the renewal here in controversy, and the letter, whose contents in the Pauley case was claimed to be binding on the bank, was written by one who was not charged with the duties of conducting the correspondence of the bank."

Entertaining the views that we do, we think that the plaintiff clearly failed to establish facts sufficient to entitle

Barbe v. Territory.

hirn to recover, and that the demurrer to the evidence was well taken, and properly sustained.

The conclusions here reached make it unnecessary to pass upon other questions presented in briefs of counsel. The judgment of the court below will be affirmed.

Pancoast, J., who presided in the court below, not sitting; Burford, C. J., who declines to take any part in said cause for the reason that he is a creditor of said insolvent bank, not sitting; all the other Justices concurring.